UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:      PAUL ROGER BUCK and                          Case No. 07-31513-KRH
              PATRICIA ELLEN BUCK,                          Chapter 13

              Debtors.

**MEMORANDUM OPINION**

The objection of eCast Settlement Corporation ("eCast") to the confirmation of Debtors' Chapter 13 plan in this case raises the issue of the proper calculation of "projected disposable income" under § 1325(b)(1)(B) of the Bankruptcy Code. Paul Roger Buck and Patricia Ellen Buck ("Debtors") filed a voluntary petition in this Court on April 23, 2007 (the "Petition Date") under Chapter 13 of the Bankruptcy Code. The Debtors filed a plan on May 8, 2007 that proposes to pay the trustee $830 per month for sixty months (the "Plan"). The Debtors derived the amount of their plan payment by calculating the difference between their Schedule I income of $5,107.66 and their Schedule J expenses of $4,277.00. The proposed total payment under the Debtors' plan is estimated to yield a dividend to the Debtors' unsecured creditors of approximately 60%.

On July 6, 2007, eCast filed an objection to confirmation of the Debtors' proposed Plan. eCast is an unsecured creditor of the Debtors based upon the Debtors' use of three credit card accounts. eCast complains that, while it will not be paid the full amount of its unsecured claims, the Debtors are proposing to pay less than the full amount of their projected disposable income under the Plan. eCast argues that the Plan payments should be calculated using projected income from the Debtors' Schedule I reduced by the expenses set forth in § 707(b)(2)(A) of the

Bankruptcy Code.[1]  eCast also asserts that Debtors should not be allowed to take the vehicle ownership deduction for cars on which no debt or lease payments are owed.

Section 1325 of the Bankruptcy Code governs confirmation of a debtor's Chapter 13 plan.  Section 1325(b)(1) prohibits the Court from confirming a plan over the objection of a holder of an allowed unsecured claim unless :

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Because the unsecured creditors will not be paid in full under the Debtors' Plan, the Debtors must commit all of their projected disposable income throughout the applicable commitment period to the repayment effort.  Section 1325(b) sets forth detailed definitions under which (i) the determination of the applicable commitment period and (ii) the calculation of disposable income are to be made.

The "applicable commitment period" cannot be less than 5 years for debtors whose current monthly income when multiplied by twelve (the "Annualized Current Monthly Income") exceeds the state median income.  "[C]urrent monthly income" is a defined term.  11 U.S.C.A. § 101(10A)(A) (Pamph. 1 to Supp. 2007).  It is "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period" prior to the petition date.  11 U.S.C.A. § 101(10A)(A) (Pamph. 1 to Supp. 2007).  The Debtors provided this

---

[1] Effective April 1, 2007 the dollar amounts listed in § 707(b)(2) were increased. 11 U.S.C.A. § 707(b)(2) (Pamph. 1 to Supp. 2007).

2

figure, as they were required to do, on Official Form B22C filed with their schedules.[2] The Debtors' "Annualized Current Monthly Income" is $88,728, which exceeds the median income for a family of the Debtors' size in Virginia. Accordingly, the applicable commitment period in this case must be at least five years.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), "disposable income" meant "income which is received by the debtor and which is not reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2) (2000). BAPCPA altered the definition of "disposable income" set forth in § 1325(b) of the Bankruptcy Code. Now "disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C.A. § 1325(b)(2) (Pamph. 1 to Supp. 2007). "Current monthly income", as defined in § 101(10A), equals the average monthly income derived by a debtor from all sources during the six-month period preceding the petition date. A debtor is required to file Official Form B22C to reflect the statutory calculation of current monthly income. *See* Interim Bankr. R. 1007(b)(6). The Debtors reported current monthly income of $7,394. Because this figure exceeds the median income for a family of the Debtors' size in Virginia, the Bankruptcy Code instructs that "amounts reasonably necessary to be expended" must be calculated in accordance with the means test set forth in § 707(b)(3) of the Bankruptcy Code. 11 U.S.C.A. § 1325(b)(2) (Pamph. 1 to Supp. 2007). *See In re Johnson,* 346 B.R. 256, 264 (Bankr. S.D. Ga. 2006) ("Section 1325(b) now requires above-median-income debtors to calculate their 'reasonable necessary expenses' according to the mathematical formula at § 707(b)(2)."). Interim Bankruptcy Rule 1007(b)(6) provides that if a debtor in a Chapter 13 case has current monthly income greater than the median family income for the applicable state

---

[2] Interim Bankruptcy Rule 1007(b)(6) requires a debtor in a chapter 13 case to file a statement of current monthly income, prepared as prescribed by the appropriate Official Form.

3

and family size, the debtor must file "a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form."[3] *See In re Naslund,* 359 B.R. 781 (Bankr. D. Mont. 2006) (means test expenses should be used in calculating projected disposable income). Using Official Form B22C, the Debtors calculated their "disposable income" under § 1325(b)(2) to be $932.72 per month.

Although the method for calculating disposable income changed under BAPCPA, the phrase "projected disposable income" employed in § 1325(b)(1)(B) did not. The case law interpreting the phrase "projected disposable income" and its relationship to other portions of the Code, therefore, remains effective. *See U.S. v. Ron Pair Enters.,* 489 U.S. 235, 244-45 (1989) (recognizing that in situations where the statutory language is subject to more than one interpretation and may conflict with state or federal law, the court may consider whether Congress expressed an intent to change a judicial interpretation of a statute); *Midatlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific . . . . The Court has followed this rule with particular care in construing the scope of bankruptcy codifications."); *Cf., Cannon v. Univ. of Chicago,* 441 U.S. 677, 699 (1979) ("In sum, it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them").

Prior to the adoption of BAPCPA, the United States Court of Appeals for the Fourth Circuit held that "[p]rojected disposable income typically is calculated by multiplying a debtor's

---

[3] In October 2005, the Judicial Conference of the United States promulgated Official Form B22C to enable debtors to provide the information necessary to calculate whether the debtor's income is above or below the median, and, if above, to calculate the deductions allowed by § 707(b)(2)(A).

4

monthly income at the time of confirmation by 36 months, the [at that time] normal duration of a Chapter 13 plan, then determining the portion of that income which is 'disposable' according to the statutory definition." *In re Solomon*, 67 F.3d 1128, 1132 (4th Cir. 1995). The modifier "projected" has always been tied to the statutory definition of disposable income. It simply means that the disposable income, calculated by the method mandated by statute, must be multiplied out (or, in other words, projected out) over the number of months covered by the plan. Projected in this context does not mean predicted. The Fourth Circuit cautioned against "engaging in hopeless speculation about the future," when it ruled that projected disposable income means statutorily-defined disposable income multiplied by the number of months in the plan. *See id.* (quoting *In re Crompton*, 73 B.R. 800, 808 (Bankr. E.D. Pa. 1987)). Congress left the term "projected" unchanged in the extensive amendments it made to the Bankruptcy Code when it enacted BAPCPA. In view of the detailed changes Congress made to the definition of "disposable income," coupled with the historical application of the unaltered term "projected", this Court can only conclude that Congress intended for the amount derived from application of the newly defined term "disposable income" to be projected out over the applicable commitment period.

>As the court observed in *In re Barr*:
>
>it appears that Congress intended to adopt a specific test to be rigidly applied rather than a standard to be applied according to the facts and circumstances of the case. Calculating "disposable income" for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on the court's determination of what expenses are reasonably necessary for the debtor's support.

341 B.R. 181, 185 (Bankr. M.D.N.C. 2006). The court in *Barr* reasoned that Congress intended to create a bright-line rule that takes away judicial discretion in determining projected disposable

5

income for individual debtors.[4]  "The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." *Id*. at 185.  Because courts are left with no discretion in applying § 1325(b), there will be instances where using the figure from a debtor's Official Form B22C will leave them with either less than they actually need to make the plan payments, or more, depending on the debtor's income and expenses from Schedules I and J.  "The result is that Congress has created a set of rules under which—as here—a debtor may be left with uncommitted income that the debtor is not required to commit to the debtor's plan under the new section 1325(b) analysis." *Id.*  Projected disposable income is based on the current monthly income calculation that looks at the debtor's prior six months' average income—"one simply takes the calculation mandated by § 1325(b)(2) and does the math."  *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006); *see also In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007).

eCast's contention that using the current monthly income figure from Official Form B22C is a historical rather than forward-looking concept is inaccurate.  Projecting current monthly income forward over the applicable commitment period is forward-looking.  Projecting income forward over a period of months does not, however, require an exercise in prediction.  Using the average income over the six-month period prior to the filing of a bankruptcy petition allows the Court to estimate the income to be received during the applicable commitment period

---

[4] In a case about the expense side of the current monthly income calculation, Judge Tice indicated that Congress intended to remove discretion from courts:
> [T]he court believes that Congress indicated a desire to implement a bright line rule when enacting the means test, and use of the Internal Revenue Service's guidance documents to disallow the expense would instead return the courts to a flexible analysis of expenses requiring excessive investigation into IRS principles and practices.

*In re Lynch*, 368 B.R. 487, 491 (Bankr. E.D. Va. 2007).  Although not directly about the income side of the current monthly income calculation, Judge Tice employed a strict interpretation in the context of expenses.  It is therefore not unreasonable to read *Lynch* as supporting the Court's interpretation in this case.

without resort to the case-by-case forecast outlawed by the BAPCPA amendments to § 1325(b). The Debtors' projected disposable income is their current monthly income less amounts reasonably necessary to be expended, as calculated on Official Form B22C, multiplied by sixty months.

Schedule B of the Debtors' bankruptcy petition indicates that the Debtors have an interest in a 1977 Chevrolet 510 pickup, a 1989 Bronco 11, and a 2000 Dodge Caravan. All three of these vehicles are owned outright by the Debtors. At Lines 28 and 29 of Official Form B22C, deductions of $471.00 (Line 28) and $332.00 (Line 29) were taken by the Debtors for "Local Standards: transportation ownership/lease expense, Vehicles 1 and 2." eCast argues that these deductions at Lines 28 and 29 of Official Form B22C should not be allowed because the Debtors own these vehicles outright and are not making any debt or lease payments on them.

eCast's objection to the Debtors' deduction of the vehicle ownership expenses is without merit. Section 707(b)(2)(A)(ii)(I) provides, in relevant part, the following:

> The debtor's monthly expenses *shall be* the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . .

11 U.S.C.A. § 707(b)(2)(A)(ii)(I) (Pamph. 1 to Supp. 2007) (emphasis added). The Court adopts the reasoning set forth in *In re Lynch* wherein Judge Tice explicitly held that the vehicle expense deduction is allowed even where the debtor makes no debt or lease payment on the vehicle. 368 B.R. 487, 491 (Bankr. E.D. Va. 2007). Accordingly, the Debtors are entitled to take the vehicle expense deduction for both of these cars even in the absence of a debt or lease payment associated with the vehicles.

Conclusion

In order for the Debtors' Plan to be approved, it must provide for the application of all of the Debtors' disposable income projected over the applicable commitment period to the payment of their unsecured creditors. Accordingly, the Debtors' Plan cannot be approved unless it provides for the payment of $932.72 per month for a period of sixty months.

A separate order shall issue.

ENTERED: _____

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Paul Roger Buck
Patricia Ellen Buck
3042 Patriot Lane
Fredericksburg, VA  22408-1728

Dale E. Adams
Dale E. Adams, Attorney
1301 Princess Anne St
Fredericksburg, VA  22401

Archie C. Berkeley, Jr.
Berkeley & DeGaetani
1301 N. Hamilton St., Suite 200
Richmond, VA  23230-3959

Robert E. Hyman
P.O. Box 1780
Richmond, VA  23218-1780